## Case No. 7,258.

### JENCKS v. COLEMAN.

[2 Summ. 221.] [1]

Circuit Court, D. Rhode Island. June Term, 1835.

R. W. Greene and Daniel Webster, for plaintiff.

Rivers & Whipple, for defendants.

STORY, Circuit Justice (charging jury). There is no doubt, that this steamboat is a common-carrier of passengers for hire; and, therefore, the defendant, as commander, was bound to take the plaintiff as a passenger on board, if he had suitable accommodations, and there was no reasonable objection to the character or conduct of the plaintiff. The question, then, really resolves itself into the mere consideration, whether there was, in the present case, upon the facts, a reasonable ground for the refusal. The right of passengers to a passage on board of a steamboat is not an unlimited right. But it is subject to such reasonable regulations as the proprietors may prescribe, for the due accommodation of passengers and for the due arrangements of their business. The proprietors have not only this right, but the farther right to consult and provide for their own interests in the management of such boats, as a common incident to their right of property. They are not bound to admit passengers on board, who refuse to obey the reasonable regulations of the boat, or who are guilty of gross and vulgar habits of conduct; or who make disturbances on board; or whose characters are doubtful or dissolute or suspicious; and, a fortiori, whose characters are unequivocally bad. Nor are they bound to admit passengers on board, whose object it is to interfere with the interests or patronage of the proprietors, so as to make the business less lucrative to them. While, therefore, I agree, that steamboat proprietors, holding themselves out as common-carriers, are bound to receive passengers on board under ordinary circumstances, I at the same time insist, that they may refuse to receive them, if there be a reasonable objection. And as passengers are bound to obey the orders and regulations of the proprietors, unless they are oppressive and grossly unreasonable, whoever goes on board, under ordinary circumstances, impliedly contracts to obey such regulations: and may justly be refused a passage, if he wilfully resists or violates them.

Now, what are the circumstances of the present case? Jencks (the plaintiff) was, at the time, the known agent of the Tremont line of stage coaches. The proprietors of the Benjamin Franklin had, as he well knew, entered into a contract with the owners of another line (the Citizens' Stage Coach Company) to bring passengers from Boston to Providence, and to carry passengers from Providence to Boston, in connection with and to meet the steamboats plying between New York and Providence, and belonging to the proprietors of the Franklin. Such a contract was important, if not indispensable, to secure uniformity, punctuality, and certainty in the carriage of passengers on both routes; and might be material to the interests of the proprietors of those steamboats. Jencks had been in the habit of coming on board these steamboats at Providence, and going therein to Newport; and commonly of coming on board at Newport, and going to Providence, avowedly for the purpose of soliciting passengers for the Tremont line, and thus interfering with the patronage intended to be secured to the Citizens' line by the arrangements made with the steamboat proprietors. He had the fullest notice, that the steamboat proprietors had forbidden any person to come on board for such purposes, as incompatible with their interests. At the time when he came on board, as in the declaration mentioned, there was every reason to presume, that he was on board for his ordinary purposes as agent. It has been said, that the proprietors had no right to inquire into his intent or motives. I cannot admit that point. I think, that the proprietors had a right to inquire into such intent and motives; and to act upon the reasonable presumptions, which arose in regard to them. Suppose a known or suspected thief were to come on board; would they not have a right to refuse him a passage? Might they not justly act upon the presumption, that his object was unlawful? Suppose a person were to come on board, who was habitually drunk, and gross in his behavior, and obscene in his language, so as to be a public annoyance; might not the proprietors refuse to allow him a passage? I think they might, upon the just presumption of what his conduct would be.

It has been said by the learned counsel for the plaintiff, that Jencks was going from Providence to Newport, and not coming back; and that in going down, there would, from the very nature of the object, be no solicitation of passengers. That does not necessarily follow; for he might be engaged in making preliminary engagements for the return of some of them back again. But, supposing there were no such solicitations, actual or intended, I do not think the case is essentially changed. I think, that the proprietors of the steamboats were not bound to take a passenger from Providence to Newport, whose object was, as a stationed agent of the Tremont line, thereby to acquire facilities, to enable him successfully to interfere with the interests of these proprietors, or to do them an injury in their business. Let us take the case of a ferryman. Is he bound to carry a passenger across a ferry, whose object it is to commit a trespass upon his lands? A case, still more strongly in point, and which, in my judgment, completely meets the present, is that of an innkeeper. Suppose passengers are accustomed to breakfast, or dine, or sup at his house; and an agent is employed by a rival house, at the distance of a few miles, to decoy the passengers away, the moment they arrive at the inn; is the innkeeper bound to entertain and lodge such agent, and thereby enable him to accomplish the very objects of his mission, to the injury or ruin of his own interests? I think not. It has been also said, that the steamboat proprietors are bound to carry passengers only between Providence and New York, and not to transport them to Boston. Be it so, that they are not absolutely bound. Yet they have a right to make a contract for this latter purpose, if they choose; and especially if it will facilitate the transportation of passengers, and increase the patronage of their steamboats. I do not say, that they have a right to act oppressively in such cases. But, certainly, they may in good faith make such contracts, to promote their own, as well as the public interests.

The only real question, then, in the present case is, whether the conduct of the steamboat proprietors, has been reasonable and bonâ fide. They have entered into a contract, with the Citizens' line of coaches, to carry all their passengers to and from Boston. Is this contract reasonable in itself; and not designed to create an oppressive and mischievous monopoly? There is no pretence to say, that any passenger in the steamboat is bound to go to or from Boston in the Citizens' line. He may act as he pleases. It has been said by the learned counsel for the plaintiff, that free competition is best for the public. But that is not the question here. Men may reasonably differ from each other on that point. Neither is the question here, whether the contract with the Citizens' line was indispensable, or absolutely necessary, in order to insure the carriage of the passengers to and from Boston. But the true question is, whether the contract is reasonable and proper in itself, and entered into with good faith, and not for the purpose of an oppressive monopoly. If the jury find the contract to be reasonable and proper in itself, and not oppressive, and they believe the purpose of Jencks in going on board was to accomplish the objects of his agency, and in violation of the reasonable regulations of the steamboat proprietors, then their verdict ought to be for the defendant; otherwise, to be for the plaintiff.

Mr. Webster, for plaintiff, then requested the court to charge that the jury must be

satisfied, that this agreement was necessary or clearly expedient for the public interest, and the interest of the proprietors of the boats, or otherwise the captain of the boat could not enforce it, by refusing the plaintiff a passage;—or, that the defendant must show, that the substantial interest of the proprietors, or of the public, required an arrangement, such as that they entered into, in order to justify their refusal to carry the plaintiff for the cause assigned.

THE COURT refused to give instruction in the manner and form as prayed; but did instruct the jury, that it is not necessary for the defendant to prove, that the contract in the case was necessary to accomplish the objects therein stated; but it is sufficient, if it was entered into by the steamboat proprietors bonâ fide and purely for the purpose of their own interest, and the accommodation of the public, from their belief of its necessity, or its utility. If the jury should be of opinion, that under all the circumstances of the case, it was a reasonable contract, and the exclusion of the plaintiff was a reasonable and proper regulation, to carry it into effect on the part of the steamboat proprietors, then their verdict ought to be in favor of the defendant; otherwise, in favor of the plaintiff. Verdict for defendant.