PHINEAS FONSECA *vs.* CUNARD STEAMSHIP COMPANY.

Suffolk.    March 18, 1891. — May 19, 1891.

Present: FIELD, C. J., C. ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Carrier — Limitation of Liability for Negligence — Passage Ticket —*
*Conflict of Laws — Lex Loci Contractus.*

If a ticket bought in England for an ocean passage, consisting of a large sheet
of paper nearly covered on both sides with print and writing, with the printed
heading on the face "Passengers' Contract Ticket," contains elaborate pro-
visions for governing the conduct, rights, and liabilities of the parties till the
steamship reaches the port of destination in this State, among other things ex-
empting the carrier from liability for any loss arising from his negligence, the
passenger in accepting and using the ticket, even if he did not read it, will be
conclusively held to have assented to its terms; and the stipulation, being valid
in England, will be enforced here, notwithstanding that a similar contract made
in this Commonwealth would be void as against public policy.

CONTRACT, with a count in 'tort, against the defendant, as
owner of the steamship Samaria, for damage to the plaintiff's
trunk and its contents.    Trial in the Superior Court, without a
jury, before *Pitman*, J., who reported the following case for the
determination of this court.

The material facts, as found by an auditor to whom the case
was referred, were as follows.    The plaintiff took passage on
the defendant's steamer from Liverpool to Boston.    He had
with him on the ship his trunk, containing articles of clothing
and personal property reasonable and proper for an ocean trav-
eller to carry as personal baggage, all of which were entirely
ruined on the voyage by the negligence of the defendant.    When
the plaintiff engaged his passage in London, he received a pas-
sage ticket from the defendant's agent there.    This ticket con-
sisted of a sheet of paper of large quarto size, the face and back
of which were covered with written and printed matter.    Near
the top of the face of the ticket, after the name of the defendant
corporation and its list of offices in Great Britain, appeared in
bold type the following: "Passengers' Contract Ticket."    Upon
the side margins were various printed notices to passengers, in-
cluding the following: "All passengers are requested to take

notice that the owners of the ship do not hold themselves responsible for detention or delay arising from accident, extraordinary or unavoidable circumstances, nor for loss, detention, or damage to luggage." The body of the face of the ticket contained statements of the rights of the passenger respecting his person and his baggage, the plaintiff's name, age, and occupation, the bills of fare for each day of the week, and the hours for meals, etc. At the bottom was printed the following: "Passengers' luggage is carried only upon the conditions set forth on the back hereof." Upon the back, among other printed matter, was the following: "The company is not liable for loss of or injury to the passenger or his luggage, or delay in the voyage, whether arising from the act of God, the Queen's enemies, perils of the sea, rivers, or navigation, restraint of princes, rulers, and peoples, barratry, or negligence of the company's servants (whether on board the steamer or not), defect in the steamer, her machinery, gear, or fittings, or from any other cause of whatsoever nature."

When the plaintiff received his ticket, his attention was not called in any way to any limitation of the defendant's liability.

The judge, upon these facts, found and ruled " that the contract was a British contract; that, by the English law, a carrier may by contract exempt himself from liability, even for loss caused by his negligence; that in this case, as the carrier has so attempted, and the terms are broad enough to exonerate him, the question remains of assent on the part of the plaintiff. This has been decided in Massachusetts to be a question of evidence, in which the *lex fori* is to govern; that although it has been decided that the law conclusively presumes that a consignor knows and assents to the terms of a bill of lading or a shipping receipt which he takes without dissent, yet a passenger ticket, even though it be called a ' contract ticket,' does not stand on the same footing; that in this case assent is not a conclusion of law, and is not proved as a matter of fact." Upon the whole case, the judge ruled that the defendant company was not exempted from liability by the contract ticket, and found for the plaintiff.

If the rulings were wrong, the verdict was to be set aside, and judgment entered for the defendant; otherwise, the judgment was to be entered on the finding.

*J. H. Appleton*, for the plaintiff.

*G. Putnam & T. Russell*, for the defendant.

KNOWLTON, J.   It is not expressly stated in the report, that the law of England was put in evidence as a fact in the case, but it seems to have been assumed at the trial, if not expressly agreed, that this law should be considered, and the argument before this court has proceeded on the same assumption.   It is conceded that the presiding justice correctly found and ruled as follows : " That the contract was a British contract ; that, by the English law, a carrier may by contract exempt himself from liability, even for loss caused by his negligence ; that in this case, as the carrier has so attempted, and the terms are broad enough to exonerate him, the question remains of assent on the part of the plaintiff."   That part of his ruling which is called in question by the defendant is as follows : " This has been decided in Massachusetts to be a question of evidence, in which the *lex fori* is to govern ; that although it has been decided that the law conclusively presumes that a consignor knows and assents to the terms of a bill of lading or a shipping receipt which he takes without dissent, yet a passenger ticket, even though it be called a ' contract ticket,' does not stand on the same footing ; that in this case assent is not a conclusion of law, and is not proved as a matter of fact."

The principal question before us is whether the plaintiff, by reason of his acceptance and use of his ticket, shall be conclusively held to have assented to its terms.   It has often been decided, that one who accepts a contract, and proceeds to avail himself of its provisions, is bound by the stipulations and conditions expressed in it, whether he reads them or not.   *Rice* v. *Dwight Manuf. Co.* 2 Cush. 80.   *Grace* v. *Adams*, 100 Mass. 505.   *Hoadley* v. *Northern Transportation Co.* 115 Mass. 304. *Monitor Ins. Co.* v. *Buffum*, 115 Mass. 343.   *Germania Ins. Co.* v. *Memphis & Charlestown Railroad*, 72 N. Y. 90.   This rule is as applicable to contracts for the carriage of persons or property as to contracts of any other kind.   *Grace* v. *Adams*, 100 Mass. 505.   *Boston & Maine Railroad* v. *Chipman*, 146 Mass. 107. *Parker* v. *South Eastern Railway*, 2 C. P. D. 416, 428.   *Harris* v. *Great Western Railway*, 1 Q. B. D. 515.   *York Co.* v. *Central Railroad*, 3 Wall. 107.   *Hill* v. *Syracuse, Binghamton, & New*

*York Railroad*, 73 N. Y. 351. The cases in which it is held that one who receives a ticket that appears to be a mere check showing the points between which he is entitled to be carried, and that contains conditions on its back which he does not read, is not bound by such conditions, do not fall within this rule. *Brown* v. *Eastern Railroad*, 11 Cush. 97. *Malone* v. *Boston & Worcester Railroad*, 12 Gray, 388. *Henderson* v. *Stevenson*, L. R. 2 H. L. Sc. 470. *Quimby* v. *Vanderbilt*, 17 N. Y. 306. *Railway Co.* v. *Stevens*, 95 U. S. 655. Such a ticket does not purport to be a contract which expressly states the rights of the parties, but only a check to indicate the route over which the passenger is to be carried, and he is not expected to examine it to see whether it contains any unusual stipulations. The precise question in the present case is whether the " contract ticket " was of such a kind that the passenger taking it should have understood that it was a contract containing stipulations which would determine the rights of the parties in reference to his carriage. If so, he would be expected to read it, and if he failed to do so, he is bound by its stipulations. It covered with print and writing the greater part of two large quarto pages, and bore the signature of the defendant company affixed by its agent, with a blank space for the signature of the passenger. The fact that it was not signed by the plaintiff is immaterial. *Quimby* v. *Boston & Maine Railroad*, 150 Mass. 365, and cases there cited. It contained elaborate provisions in regard to the rights of the passenger on the voyage, and even went into such detail as to give the bill of fare for each meal in the day for every day of the week. No one who could read could glance at it without seeing that it undertook expressly to prescribe the particulars which should govern the conduct of the parties until the passenger reached the port of destination. In that particular, it was entirely unlike the pasteboard tickets which are commonly sold to passengers on railroads. In reference to this question, the same rules of law apply to a contract to carry a passenger, as to a contract for the transportation of goods. There is no reason why a consignor who is bound by the provisions of a bill of lading, which he accepts without reading, should not be equally bound by the terms of a contract in similar form to receive and transport him as a passenger. In

*Henderson* v. *Stevenson, ubi supra,* the ticket was for transportatation a short distance, from Dublin to Whitehaven, and the passenger was held not bound to read the notice on the back, because it did not purport to be a contract, but a mere check given as evidence of his right to carriage. In later English cases, it is said that this decision went to the extreme limit of the law, and it has repeatedly been distinguished from cases where the ticket was in a different form. *Parker* v. *South Eastern Railway,* 2 C. P. D. 416, 428. *Burke* v. *South Eastern Railway,* 5 C. P. D. 1. *Harris* v. *Great Western Railway,* 1 Q. B. D. 515. The passenger in the last mentioned case had a coupon ticket, and it was held that he was bound to know what was printed as a part of the ticket. *Steers* v. *Liverpool, New York, & Philadelphia Steamship Co.* 57 N. Y. 1, is in its essential facts almost identical with the case at bar, and it was held that the passenger was bound by the conditions printed on the ticket. In *Quimby* v. *Boston & Maine Railroad, ubi supra,* the same principle was applied to the case of a passenger travelling on a free pass, and no sound distinction can be made between that case and the case at bar.

We are of opinion that the ticket delivered to the plaintiff purported to be a contract, and that the defendant corporation had a right to assume that he assented to its provisions. All these provisions are equally binding on him as if he had read them.

The contract being valid in England, where it was made, and the plaintiff's acceptance of it under the circumstances being equivalent to an express assent to it, and it not being illegal or immoral, it will be enforced here, notwithstanding that a similar contract made in Massachusetts would be held void as against public policy. *Greenwood* v. *Curtis,* 6 Mass. 358. *Forepaugh* v. *Delaware, Lackawanna, & Western Railroad,* 128 Penn. St. 217, and cases cited. *In re Missouri Steamship Co.* 42 Ch. D. 321, 326, 327. *Liverpool & Great Western Steam Co.* v. *Phenix Ins. Co.* 129 U. S. 397.

*Judgment for the defendant.*